All right, sir. Mr. Poppins, is that correct? Yes. Okay. All right. You're up. May it please the Court, my name is Robert Poppins on behalf of Bollinger Shipyards and American Longshore Mutual Association. Your Honors, before I begin, I'd like to respectfully request three minutes of rebuttal. Okay. Your Honors, we respectfully request that this Court reverse the Board's finding that Bollinger is the responsible employer for Mr. Worthy's pulmonary condition. We request a reversal based on two main errors. First, claimant was not disabled after his employment with Bollinger on March 22, 2010. Well, and you say in your brief, page 5, you say, I think on this point, Dr. Bourgeois did not provide any specific work restrictions related to the pulmonary condition. Didn't the doctor tell him you needed, and I'm looking at the testimony of the claimant, I need to, he told me I need to be disabled and go to Social Security and get disabled. And he told me I had to go to a pulmonologist first. So telling someone they're disabled and should apply for Social Security benefits, why doesn't that end the case? It's, you're correct in reviewing the brief on that issue. When Dr. Bourgeois provided that opinion, he did not provide it from an unequivocal employment-related disability standpoint. Why else do you apply for Social Security except to get money because you're disabled from work? Correct. Correct, Your Honor. But the disability does not have to be work-related in order to get Social Security disability benefits. And I now. Oh, sure, you can hurt yourself out at the park on the weekend. Absolutely, Your Honor. But I thought your argument is not about the cost. I think there's plenty of evidence this was caused from working in the shipyards. I thought your argument was he was not disabled on that March date. Correct. It is, Your Honor, not disabled. So how do you square saying he was not disabled with the doctor saying apply for Social Security? Because the Act defines disability as the incapacity because of injury to earn wages which claimant was earning at the time of injury in same or similar employment. In 1984, that definition in law was amended and was added that it needs to be a permanent impairment. So while claimant was told this by Dr. Bourgeois, that same day, claimant went and applied with a subsequent employer, Thomas C. He applied for the same position. Thomas C. sent him to their doctor for a medical screening. He passed. He successfully obtained that job as a welding supervisor as he was working with Bollinger. And actually, his testimony throughout the record, you will notice that his job was not only the same, it provided greater work activities. He was working longer hours. He was exposed to the same injurious stimuli plus additional injurious stimuli that he was not exposed to at Bollinger. The wages he earned at Thomas C. in that seven week period were actually greater than he earned with Bollinger. Therefore, there was no diminished earning capacity and no restrictions. So while Dr. Bourgeois provided that opinion to him, it was not clear whether it was work related or not. His subsequent obtaining employment with Thomas C. takes disability out the question. Well, maybe you're right that he wasn't disabled, but the problem is the question is just did the agency have substantial evidence from which they could have concluded he was disabled? And I think it's when they rely on a doctor saying apply for social security disability, even if you're right that that doctor was wrong, how is that not evidence that would have supported the agency's view? Because we feel like the agency did not look at the substantial evidence in the record. They didn't give credit to his subsequent employment. And what else is important to note, when he left Thomas C., and I should use the word terminated for Thomas C., it was also not because of injury. He was terminated for lack of a better word, sleeping on the job. So that proves in our opinion that there was no disability. And then he didn't file his claim until after his separation from Thomas C. That's when he contended his disability started. And what's also important is ALJ Romero at the lower level also found that his disability started in May of 2010. So when you look at the evidence as a whole, we do not believe that the substantial evidence was taken into consideration in the record. What the lower courts did, in our opinion, is misapply the awareness standard for Cordeo. The entire lower court's decision is premised on Cordeo, which is a 1955 case out of the Second Circuit. The Board, in reviewing Judge Romero's decision and order, recognized that this Honorable Court, the Fifth Circuit, has never applied it. In your brief before the Board, did you argue that there was any misapplication of the law? Yes, it was. Yes, I do argue that. You argue that to the Board? I'm sorry? What did you argue to the Board? That they misapplied the law. Administrative law judge, I should say. Yeah. Yeah, that they misapplied the law as to disability standard. You disagreed about the date of disability, which is what you started off saying here. Absolutely. Absolutely. But did you say Cordeo's not the law? Cordeo's wrong? Yes, we argued Cordeo was wrong. We argued it before this Honorable Court. But below, did you? I mean, I understand you're arguing to us not that Cordeo's wrong, just that the awareness has to do with the date of disability, not the date of injury. You rely on that First Circuit case, right, that awareness really is about the key date is the date of disability, not the date when you might have gotten injured. Correct. When disability and awareness do not coincide. Right. Yes, Your Honor. In that First Circuit case of Libor Mutual, which was a 1992 First Circuit case, it looked at Cordeo and it looked at it closely. It essentially said Cordeo cannot be applied blindly to cases where awareness and diminished earning capacity occur at separate times. If the Board was right in saying Bourgeois in March said he's disabled, I know you disagree with that, but you lose if the Board was right about that. Yes, Your Honor, on that issue. In Liberty Mutual, going back to the disability argument, it looked at the Cordeo standard. It went back and looked at the legislative intent, the congressional history of the last responsible employer case, and because it was Congress's intent to make a last responsible case efficient for claimants and administration under the Act, they can't do an apportionment, which Cordeo agreed with. But relying on an awareness aspect alone gives too much subjective review from a claimant standpoint, while the date of disability tends to rely more on objective evidence, which is essentially what I'm arguing to Your Honors today. When you look at the entire objective evidence in this case, claimant's subsequent employment with Thomas C., claimant's testimony of what he experienced at Thomas C., the lack of a diminished earning capacity at Thomas C., under the Liberty Mutual standard, Thomas C. would have to be found to be the responsible employer. But when you look, as you say, to the entire objective evidence, and just even putting these legal tests to the side for a second, you've got this guy working for years and years at your shipyard under conditions that everyone agrees can cause this type of pulmonary condition, and then he goes for seven weeks to this other force there. I mean, it just seems to be hard to say that that seven weeks caused it, and years and years of working at your place didn't, especially when the testing was the same when he left your employer as when he was tested after working at Thomas C. You think it's that seven weeks, the evidence only calls for that conclusion, that it was the seven weeks and not the years and years that caused this condition? Very good point, Your Honor, and I would just like to back up, and I am arguing that it caused it, because I understand the PFT tests that were done in 2010 that were essentially the same. March 22, 2010 and July 2010 with Dr. Gomes had essentially the same PFTs. However, when the case was remanded and further discovery was conducted, a year and a half later, when additional PFTs, his lung function continued to decrease and worsen. Dr. Gomes was deposed again and essentially presented the question of, Doctor, before you said there was no difference. Is there a difference now? Yes, there is. Is there a continued decline? Yes, there is. Doctor, if we told you that Mr. Worthy experienced this here at Bollinger as well as this for his condition, and the answer was yes, as argued to the BRB and to Your Honors here. However, even though I have, in my opinion, the testimony that it did contribute to his condition, what appellees have cited is the IBO's case, which is dishonorable court's decision, and IBO stands for the proposition that you do not need an actual contribution or causation, simply working conditions that could have, and I believe it's undisputed, and all the doctors have said that the working conditions that Thomas see, the inhaling of all those particles and toxic fumes, has the potential to cause or aggravate a pulmonary condition. Going back to the disability argument that I'm making, the Liberty Mutual case, from the First Circuit, also looked at the 94, I'm sorry, the 84 amendments as they pertained to a claimant's notice and filing requirements under Section 912 and 913. Therein, Congress intended that for purposes of filing a claim, giving notice under 912, filing under 913, included the claimant's awareness of the relationship of his disease with his employment and disability. And once again, I go back to he was not disabled until after his Thomas C. employment. That's what triggers a claimant's requirements for filing a time-protected occupational disease case. What made him disabled after his Thomas C. employment? And what are you pointing to? Because you don't think what Bourgeois said, and then he goes to work at Thomas C., so what made him disabled after working at Thomas C.? The additional exposures there. And a diagnosis at that point? I mean, what date are you pointing to? After May 18th of 2010, he is terminated. Then he actually goes to that pulmonologist. It's not one that Dr. Bourgeois recommended, but he goes to a pulmonologist specialized in lung disease, and he receives a diagnosis. If you look closely to Dr. Bourgeois' diagnosis, it's COPD. Dr. Bourgeois does not relate it to his employment. Mr. Worthy was a long-time smoker. Now Mr. Worthy has testimony in there that says, well, I had a good idea it was related. But Dr. Bourgeois' diagnosis was not COPD due to fumes, sandblasting, smoke, carbon, or any of those factors. What was the level of intensity of the exposure he had at Thomas C. for the two weeks? Chief Judge, it was seven weeks. Seven weeks. And the record is clear that the exposure was tremendous. Claimant testified that it was the, quote, worst, end quote, exposures that he's ever been around. How long did he work for you? He worked for us for different time periods. A total of, I would say, 10 or 15 years. There were breaks when he went out for other injuries. And he worked for the successor employer how long? Seven weeks. Seven weeks. And it's our respectful position that even one day of injurious exposure can determine a last responsible employer. And Chief Judge, to go back to your question, the testimony further reveals that he said that he would have to use the inhaler more at the end of those days. There were longer days. At the end of the days, he would cough up black stuff out of his lungs, his nose. So to answer your question, it was a tremendous and greater exposure than he had at Bollinger. I could follow that in terms of exacerbation of a condition, aggravation, etc. It still seems difficult. Is there a medical opinion somewhere that says what you're arguing? In general, is not sort of this incremental, long-term exposure versus an intense, short-term? You follow what I'm saying? Yes. I mean, is there, I hear the argument, but is there something in the record of some physician or someone else who opines medically what you say is the case? The only opinion we have on that issue is Dr. Gomes' deposition testimony that that was a contributing factor to his overall pulmonary injury. Okay. All right. Thank you, sir. Mr. Vail? Good morning, Your Honors. Richard Vail, representing Respondents Thomas C. and LWCC. We hear from the Benefits Review Board who upheld the decision of the Administrative Law Judge in this case where there were facts which the Administrative Law Judge relied upon to come to his conclusions, which are supported by the substantial evidence in the record. And so, so long as there is substantial evidence in the record, we believe that the ALJ's decision as affirmed by the judge, this whole case deals with the legal principle of who is going to be the responsible employer in cases where the employee works for a succession of employers or more than one employer during the time that he becomes exposed to injurious stimuli, and who is the employee for all of the compensation medical benefits due and owing for that injury. And Cardillo and Cordero and Patterson, in particular, came up with the test. And the test is essentially that the employer who last caused injurious stimuli to the employee during employment, for which he becomes disabled and is aware of the connection between that exposure and his employment, is the last causative employer. I have a question about the framework in light of what you just said, which is how I read the test. But what happened, if that's the test, why wasn't it just the end of story when the board said there was this awareness when he was working for Bollinger in March, when he went to see Dr. Bourgeois? Why does Thomas C. even, but then they said Thomas C. has to rebut, and they found Thomas C. did rebut, but if the key question is awareness, why isn't the finding of awareness for Bollinger the end of the story? Unless maybe there's an argument it was exacerbated at Thomas. It's the same as the ALJ used not precise language and kept using the word awareness when it's supposed to be disability. So that's what kicked it back the first time, was the BRB asked the ALJ, what do you mean by awareness? Is that the same as disability? Because you can be aware that you're sick, you can be aware that it's related to your employment, but if you're still out there every day doing what you're supposed to be doing, you're not disabled. And the trigger is all three. Right, but so when it gets kicked back, the ALJ then says, yeah, he was disabled in March. He meets all of those when he was with Bollinger. But so then, why isn't that the end of story? Because even when it got kicked back, the ALJ still said, well, but let's see if Thomas C. is also liable, and they're not because they rebutted with this test. But it seems to me, if all those awareness components are met in March when he's still under Bollinger's care, that meets the test, and that's the ballgame. The judge found he was disabled on March the 22nd, 2010, because the doctor said, you can't work here anymore. You ought to go try for social security disability. You need to see a pulmonologist. And he wasn't able to work, and that's when the economic disability occurred on March the 22nd, 2010, when he wasn't working anymore. Bollinger wouldn't let him work there anymore, and he started missing wages. I argue that if somehow, hypothetically, Bollinger had, excuse me, the claimant had not filed a claim until March the 23rd, 24th, 2011, more than one year after he saw Dr. Bourgeois on the 22nd, Bollinger would be in here saying, your claim's prescribed. You are aware of your disease being related to your employment, and you were disabled on March the 22nd. You needed to file a claim before March the 22nd, 2011, and since you didn't, it's prescribed. Why they kept asking for the analysis of the 20A presumption stymied me for a long time. And the best I can do to answer that question is, if I had been the BRB, I would have said, Judge Romero, we're remanding the case back to you because you kept using the word awareness. We don't like that word. We like the word disability. So would you look at the facts in the context of disability? Then, and only then, if you determine that the disability is after his employment with Thomas C., then you need to figure out who is the responsible employer based on who was the last cause of employer to have caused harm to Mr. Worthy in this case. That would have been the better. I don't know why, once it's determined that he was aware, he was disabled, and he knew of the relationship between his employment and the exposure at Bollinger, that's the trigger. I mean, that's Patterson. That's all the cases that cited in our brief. That's the trigger. That trigger occurred on March the 22nd, 2010, which is dependent on the facts, which the ALJ also found that the facts were substantial for that. That, the analysis should stop there. I don't know why they'd said, okay, now we're going to do the 20A presumption dance, and let's all, you know, figure out who was the last cause of employer. Because under 20A, there's a presumption that an injury occurred and the claim is compensable. And in the responsible employer situation, the court does have to look at who is the last cause of employer, and this 20A presumption comes in because they've said that the last chronological employer is the one that has to rebut the 20A presumption first. And if he doesn't, he's it. If he does, then you move backwards. In this case, the ALJ also found that going through this exercise, which I don't believe was necessary, but when he did, he found there was substantial evidence that this seven weeks of exposure did not cause him harm. And he found that because of the PFTs and Dr. Gomes' testimony that the test before his work at Thomas C. and the seven weeks after Thomas C. were almost identical, and that's rarely the case. And so there was substantial evidence on that point, too, that even if Thomas C. had to rebut the 20A presumption, which I submit they didn't have to do, they did. They did with the facts from Dr. Gomes and the PFTs, which is what the ALJ relied upon to find that the 20A presumption had been rebutted. But I agree with Your Honor. Once the ALJ found that the trigger for who is the last causative and thus responsible employer occurred on March the 22nd, then there should have been no further analysis in the case because those cases that I've cited, Cardell, Cordero, and Patterson, say that it's the last causative employer before the employee became aware or with reasonable exercise would have become aware that his employment caused his sickness for which he was disabled. And once that occurs, that's who the last causative employer shall be. And in this case, that occurred before he went to work for Thomas C. And between March the 22nd, when Dr. Bollinger said, you can't work here anymore because of your COPD, and the claimant knew that his COPD was at related to his work out there, that was the trigger date. And he did not go back to work until seven days later. And therefore, that's the economic disability was during that period of time which triggers the last causative employer. In Patterson, there was one month of unemployment which triggered the date of who was going to be the last causative employer. And so, I don't think whether it's one day or seven days or one month really matters. It's not the length of disability, it's when it occurred and when he was aware that that disability was related to his employment. In this case, it was March the 22nd, again, for BLJ to examine the 28 presumption if he finds that March the 22nd is the trigger date. And it's part of the exercise when you're dealing with this last responsible employer doctrine which is judicially created and it's a way that it may not be fair this time, but maybe somebody else will have to bear the burden the next time. And it's economically feasible so that the claimant doesn't have to come in with doctors and experts trying to say, well, he was one-tenth of my problem and he was one-twentieth. They just want to get it over with and it's going to be the last man standing before he's aware that his condition is related to his employment and he becomes disabled. And in this case, that was March the 22nd, 2010, before he went to work at Thomas C. So, Bollinger loses this time, in our opinion, which is what the BRB found and which the Administrative Law Judge found based on substantial evidence. So, unless the Court has any other questions, I would hope that they would find that in this case, Bollinger is the responsible employer for all the reasons I've articulated thus far. If you had a secession of an employer, a back pattern, a situation of multiple liabilities, is that liability apportioned? In other words, both of these companies would be fully liable for the compensation? No, sir. How would that work? It's the last causative employer before. So, the first one gets off the hook? Yes, completely. Oh, it's the musical chairs game. And that's the 28 presumption part of it. Okay. But, yeah, well, you know, it doesn't take, you know, there's cases where they've worked for one day at a certain employer. These are the hearing loss cases. And then they got the audiogram on that day and then went to work for somebody else the next day. It was the employer at the time that the audiogram was handed to them is that date. Careful who you hire, I guess. Well, yes, sir. They think that it's just, you know, what goes around comes around. So, if you're the one today, maybe it's the employer down the street tomorrow. But it's been around for a long time. It's been discussed by Cordero and Patterson. It's what we live with. And, yes, it's the last, basically the last man standing before he becomes aware that the injury stimuli at his employment caused his disability and he stopped working for some period of time, which is exactly what occurred in this case, before he went to work for Thomas A. Thank you. All right. Thank you. Back to you, Mr. Popich. One other important issue, Your Honors, that you probably reviewed through the record is claimant himself agreed, while he has not made an appearance here today or filed a brief, throughout the pendency of these claims from day one through the appeals, had agreed with Bollinger's position that his last injurious exposure under the law was with Thomas C. And Thomas C. should be the responsible employer. He relied on that based on the IBO standard that we talked about earlier. Counsel brought up the 28 presumption. The 28 presumption, in my view, is kind of new to the ballgame when it comes to last responsible employers. The best, I think, the best views on the 28 presumption come from the Ninth Circuit. And it's not cited in my brief here today, but if I may address that, I ask for your permission to cite two cases because the 28 presumption came up. The Albina Engine case out of the Ninth Circuit and the Kalacia case out of the Ninth Circuit both look at these multiple employer cases. Once claimant establishes a Section 28 presumption, what Mr. Worthy did in this case, the courts do a reverse sequential analysis of each employer, starting with the last. That last employer has to excapolate itself from liability. If you look at the facts in this case, it is our opinion that Thomas C. did not do that. And he didn't do that for various reasons. Claimant's own testimony, claimant's lack of a diminished earning, and the Dr. Gohm's subsequent testing, which showed an increased worsening of his pulmonary condition. One other interesting thing about this awareness standard is when claimant went to Dr. Bourgeois on that March 22, 2010 date, he didn't go there for a pulmonary at that time after undergoing bilateral knee surgeries and a shoulder surgery. So essentially it was a comprehensive exam, and Dr. Bourgeois didn't diagnose him with occupational COPD. The disability period here that I keep talking about, there was no disability period. Not after he left Bollinger, because on that same day, claimant went and applied for the same job. He was not disabled. Disability requires, as mentioned earlier, more than just an opinion from one physician. When claimant has already gone, secured a job, and has not All right. Thank you, both sides.